IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KYLE J. JOHNSON, | ) | |
|     Petitioner, | ) | Civil Action No. 11-94 Erie |
| | ) | |
| v. | ) | District Judge Sean J. McLaughlin |
| | ) | Magistrate Judge Susan Paradise Baxter |
| SUPERINTENDENT COLEMAN, et al., | ) | |
|     Respondents. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.    RECOMMENDATION**

It is respectfully recommended that the petition for a writ of habeas corpus be denied and that a certificate of appealability be denied.

**II.    REPORT**[1]

    **A.    Relevant Background**

In July of 2005, the Erie police set up surveillance of a home located at 943 East 23rd Street. They observed Petitioner, Kyle J. Johnson, come and go from the home. On July 28, 2005, the officers saw him meet Timothy Burton outside the house, walk with Burton behind the house, and return several minutes later. Burton later informed the officers that the person he had met, known to him as "C-Note" (and who he would identify at trial as Petitioner), had sold him crack cocaine. The police obtained and executed a search warrant at the residence. One officer knocked on the front door and announced his presence and purpose. He observed an individual named Tony Bell running away from the front door yelling that the police were there. Several other officers positioned at the back of the house observed the

---

[1]     Respondents have submitted the Common Pleas Court's file and relevant transcripts. The documents in the Common Pleas Court's file are indexed and numbered 1 through 63. They shall be cited to as "CP Dkt. No. __."

1

back door open. They saw Petitioner, Bell, and a third individual attempt to exit the house. The police entered through the back door and stopped the three men in the kitchen. They also found a woman named Angela Richardson inside the home. (CP Dkt. No. 59, Commonwealth v. Johnson, No. 1685 WDA 2009, slip op. 1-2 (Pa.Super. Sept. 13, 2010)).

The police searched the home and found crack cocaine, powder cocaine, heroin, marijuana, ecstasy pills, a digital scale, creatine mix, a box containing a large number of razor blades, and stacks of cash. In the backyard, they discovered marijuana, a handgun, and $845. The police did not find any personal use paraphernalia in the residence. In total, they recovered 42 grams of cocaine, over 18 grams of heroin, nearly 300 grams of marijuana, and 231 ecstasy pills. (Id. at 2-3).

The Commonwealth charged Petitioner, Bell, and Richardson with multiple drug offenses. Vincent P. Nudi, Esquire, was Petitioner's attorney. On January 25, 2006, Petitioner and his co-defendants proceeded to trial in the Court of Common Pleas of Erie County. The jury found Petitioner guilty of two counts of Possession With Intent to Deliver ("PWID") (35 P.S. §§ 780-113(a)(30)), and three counts each of Possession Of a Controlled Substance (35 P.S. §§ 780-113(a)(16)) and Criminal Conspiracy (18 Pa.C.S. § 903(a)(1)). On March 3, 2006, the court sentenced Petitioner to an aggregate term of 12-24 years' imprisonment.

In the petition for a writ of habeas corpus which he has filed with this Court, Petitioner contends that Attorney Nudi provided him with ineffective assistance of counsel "for failing to request a limiting cautionary jury instruction at trial regarding evidence of prior uncharged criminal conduct[.]" [ECF No. 1 at 14]. He also claims that there was insufficient evidence to support the jury's verdicts. [ECF No. 1 at 8-14]. Petitioner raised both of these claims to the Superior Court of Pennsylvania, which denied them on the merits. (CP Dkt. No. 27, Commonwealth v. Johnson, No. 410 WDA 2007, slip op.

2

at 2-10 (Pa.Super. Nov. 14, 2007) (denying the insufficiency of the evidence claim); CP Dkt. No. 59, Johnson, No. 1685 WDA 2009, slip op. at 5-9 (denying the ineffective assistance of counsel claim)).

Respondents have filed an Answer [ECF No. 19], in which they contend that this Court should also deny Petitioner's claims on the merits.

### B. Discussion

#### (1) Standard of Review

This case is governed by the federal habeas statute applicable to state prisoners, 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214, April 24, 1996 ("AEDPA"). Under this statute, habeas relief is only available on the grounds that Petitioner's judgment of sentence was obtained in violation of his federal constitutional rights. 28 U.S.C. § 2254(a). Errors of state law are not cognizable. See, e.g., Priester v. Vaughn, 382 F.3d 394, 402 (3d Cir. 2004) ("Federal courts reviewing habeas claims cannot 'reexamine state court determinations on state-law questions.'") (quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)). See also Real v. Shannon, 600 F.3d 302, 309-10 (3d Cir. 2010). Moreover, "[a] state court's interpretation of state law … binds a federal court sitting in habeas corpus." Sistrunk v. Rozum, 674 F.3d 181, 186 (3d Cir. 2012) (quoting Bradshaw v. Richey, 546 U.S. 74, 76 (2005)).

Because the state court adjudicated both of Petitioner's claims on the merits, this Court's analysis of them is governed by AEDPA's standard of review as codified at 28 U.S.C. § 2254(d), which provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was *contrary to,*[2] *or involved an unreasonable application of,*[3] *clearly established Federal law, as determined by the Supreme Court of the United States*; or
>
> (2) resulted in a decision that was based on an *unreasonable determination of the facts in light of the evidence presented in the State court proceeding*.

(Emphasis added).

The Supreme Court has repeatedly stressed the "highly deferential" review that this Court must accord the state court's decision under § 2254(d):

> We have explained that "an unreasonable application of federal law is different from an incorrect application of federal law." Williams v. Taylor, 529 U.S. 362, 410, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Indeed, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id., at 411, 120 S.Ct. 1495. Rather, that application must be "objectively unreasonable." Id., at 409, 120 S.Ct. 1495. This distinction creates "a substantially higher threshold" for obtaining relief than *de novo* review. Schriro v. Landrigan, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007). AEDPA thus imposes a "highly deferential standard for evaluating state-court rulings," Lindh v. Murphy, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and "demands that state-court decisions be given the benefit of the doubt," Woodford v. Visciotti, 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (per curiam).

Renico v. Lett, — U.S. — , 130 S.Ct. 1855, 1862 (2010). In another case, it elaborated:

> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. Cf. Felker v. Turpin, 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with

---

[2] "A state-court decision is 'contrary to' clearly established federal law if the state court (1) 'contradicts the governing law set forth in [the Supreme] Court's cases' or (2) 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a [different] result.'" Lambert v. Blackwell, 387 F.3d 210, 234 (3d Cir. 2004) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).

[3] "A state-court decision 'involve[s] an unreasonable application' of clearly established federal law if the state court (1) 'identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case'; or (2) 'unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" Lambert, 387 F.3d at 234 (quoting Williams, 529 U.S. at 407).

4

this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. Jackson v. Virginia, 443 U.S. 307, 332, n. 5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Harrington v. Richter, — U.S. —, 131 S.Ct. 770, 786-87 (2011).

### (2)    Ineffective Assistance of Counsel

As set forth above, Timothy Burton testified for the Commonwealth that a man named "C-Note" sold him crack cocaine just hours before the police executed the search warrant at 943 East 23rd Street. He identified Petitioner as the man he knew as C-Note. (Day 1 Trial Tr. at 9-10). The Commonwealth did not charge Petitioner with a crime related to this alleged drug sale to Burton. Petitioner concedes that Burton's testimony regarding this "prior bad act" was potentially admissible to explain the sequence of events that formed the history of the case or to identify the residence where drug dealers directed customers. He argues, however, that Attorney Nudi should have requested a limiting jury instruction explaining how the jury should consider Burton's testimony regarding the alleged drug transaction because the Commonwealth did not charge him for that act.

The "clearly established Federal law" for AEDPA purposes in which to analyze this claim of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, Petitioner first must show that Nudi's representation fell below an objective standard of reasonableness. 466 U.S. at 688. The law presumes that he was effective:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel's was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate

5

the distorting effects of hindsight, to reconstruct the circumstances of counsel's
challenged conduct, and to evaluate the conduct from counsel's perspective at the time.
Because of the difficulties inherent in making the evaluation, a court must indulge a
strong presumption that counsel's conduct falls within the wide range of reasonable
professional assistance; that is, the defendant must overcome the presumption that, under
the circumstances, the challenged action might be considered sound trial strategy.

Id. at 689 (internal citations and quotations omitted). It is "only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." United States v. Kauffman, 109 F.3d 186, 190 (3d Cir. 1997) (quoting United States v. Gray, 878 F.2d 702, 711 (3d Cir. 1989)).

Strickland also requires Petitioner to demonstrate that he was prejudiced by Nudi's deficient performance. This requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. As the United States Court of Appeals for the Third Circuit recently explained:

> [I]t is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Harrington, 131 S.Ct. at 787 (citing Strickland, 466 U.S. at 693). Counsel's errors must be "so serious as to deprive the defendant of a fair trial." Id. at 787-88 (citing Strickland, 466 U.S. at 687). *The likelihood of a different result must be substantial, not just conceivable.* Id.

Brown v. Wenerowicz, 663 F.3d 619, 630 (3d Cir. 2011) (emphasis added).

### (a) The state court's adjudication

Petitioner raised this same claim in his motion for relief under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541 *et seq.* On January 9, 2009, the PCRA Court held an evidentiary hearing on the claim, at which Nudi testified. He explained why he did not request a limiting jury instruction related to Burton's statements that Petitioner, known to him as C-Note, had sold him crack cocaine on the day police executed the search warrant. (N.T. PCRA Hearing, 1/9/09, at 6). He stated that his strategy at trial was to convince the jury that Burton's identification was not credible

6

and that C-Note was not Petitioner, but rather another individual at the residence who physically resembled Petitioner. (Id.) Nudi stated that, in his opinion, it would have been unwise to make the mistaken-identity argument throughout trial and then request a limiting jury instruction that essentially conceded Petitioner was the man who sold drugs to Burton. (Id.)

The PCRA Court determined that Nudi had made a reasonable tactical decision in deciding not to request a limiting instruction and that, in any event, Petitioner was not prejudiced. (See CP Dkt. No. 57, Commonwealth v. Johnson, No. 3350 of 2005, slip op. (Dec. 2, 2009)). In affirming this decision on appeal, the Superior Court adopted the PCRA Court's analysis, in which it explained:

> It is evident in this case that, in light of all of the circumstances and evidence presented at trial, the strategy of trial counsel had a reasonable basis of effectuating his client's best interest. It was perfectly within the range of proper trial strategy for defense counsel to believe that calling attention to the alleged earlier transaction would not further Appellant's interest in light of the strategy to discredit the identification of Appellant as the person involved in the delivery of drugs.
>
> Moreover, had the instruction been requested, it is likely that it would have been denied considering that the testimony in question did not constitute a "bad act" that was separate and apart from the facts of the case presented to the jury. The essence of the testimony of the Commonwealth's witness was that, as a part of his involvement with Appellant during the time relevant to the case, he was involved in purchasing drugs from someone identified as C-Note. As such, the evidence is an indication that there was a sequence of events that formed the history of the present case, was a natural part of its development and as such the evidence was clearly admissible.
>
> Moreover, it was the Commonwealth's position that its witness knew who C-Note was because he had purchased drugs from him in the past, so identification was clearly one of the purposes for which it was introduced. There was no argument that his prior involvement with the witness in question should be viewed as evidence of his current guilt but rather that the witness knew the seller's identity. In such circumstances, it is entirely reasonable for counsel to take the position that a limiting instruction was neither necessary nor required.
>
> Finally, assuming there may have been an advantage to requesting limiting instructions, any errors that would have flowed therefrom would have been harmless. The evidence in the case was overwhelming that Appellant was involved in a large scale drug operation from his house where police had found a virtual supermarket for drug distribution.

(CP Dkt. No. 59, Johnson, No. 1685 WDA 2009, slip op. at 7-8 (quoting CP Dkt. No. 57, Johnson, No. 3350 of 2005, slip op. at 2).

The Superior Court also reiterated that Petitioner could not establish that he was prejudiced by Nudi's tactical decision. It summarized the large quantity of contraband found at the home on 943 East 23rd Street and concluded that, based upon the "overwhelming" evidence inculpating Petitioner, he "cannot establish there was a reasonable probability the jury would have rendered a different verdict had trial counsel requested a limiting jury instruction and the court agreed to give it." (Id. at 8-9).

**(b)   Analysis**

The Superior Court applied the Strickland standard when it evaluated Petitioner's ineffective assistance claim. (Id. at 5-6). See also Commonwealth v. Kimball, 724 A.2d 326 (Pa. 1999) (legal standard for evaluating ineffective assistance claims in a PCRA proceeding is the same as the federal Strickland standard). Accordingly, its adjudication satisfies review under the "contrary to" clause of § 2254(d)(1). See Williams, 529 U.S. at 406. Thus, the only question for this Court to decide is whether the Superior Court's decision was an "unreasonable application of" of Strickland or based on an unreasonable determination of the facts. Petitioner has not shown that it was either of those things. In reaching this conclusion, the Court is mindful that:

> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both "highly deferential," [Strickland, 466 U.S.] at 689, 104 S.Ct. 2052; Lindh v. Murphy, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, [Knowles v. Mirzayance, 556 U.S. at —, 129 S.Ct. 1411, 1420 (2009)]. The Strickland standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at —, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). W*hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.*

8

Harrington, 131 S.Ct. at 788 (emphasis added).

At the PCRA hearing Nudi articulated an objectively reasonable basis for not requesting a limiting instruction. As the Superior Court determined, his decision is precisely the type of strategic choice that a court may not second guess. See, e.g., Strickland, 466 U.S. at 690 ("strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."); Thomas v. Varner, 428 F.3d 491, 500 (3d Cir. 2005) ("where it is shown that a particular decisions was, in fact, an adequately informed strategic choice, the presumption that the attorney's decision was objectively unreasonable becomes 'virtually unchallengeable.'").

The Superior Court also reasonably concluded that Petitioner failed to show prejudice in light of the overwhelming evidence of his guilt. As the Third Circuit Court has explained, "[i]t is firmly established that a court must consider the strength of the evidence in deciding whether the Strickland prejudice prong has been satisfied." Buehl v. Vaughn, 166 F.3d 163, 172 (3d Cir. 1999) (citing Strickland, 466 U.S. at 695). This is so because "[a] court simply cannot" "determine whether there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different[,]" "without considering the strength of the evidence against the accused." Id.

Based upon all of the foregoing, Petitioner's claim that Nudi provided him with ineffective assistance must be denied.

### (3) Insufficient Evidence to Support His Convictions

Petitioner also contends that there was insufficient evidence to support his convictions. The "clearly established Federal law," 28 U.S.C. § 2254(d)(1), in which to analyze this claim is set forth in Jackson v. Virginia, 443 U.S. 307, 309 (1979), in which the Supreme Court held that "[t]he Constitution prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt" of

9

each element of the offense. Under Jackson, evidence is sufficient to support a conviction if, "after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 319 (emphasis in original). "Jackson leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" Coleman v. Johnson, — U.S. — , 132 S.Ct. 2060, 2065 (2012) (*per curiam*) (quoting Jackson, 443 U.S. at 319).

### (a) The state court's adjudication

In rejecting this claim, the Superior Court first summarized Petitioner's argument, which was that the "Commonwealth failed to prove he was in possession of 'any illegal substances found in the residence.'" (CP Dkt. No. 27, Johnson, No. 410 WDA 2007, slip op. at 6, quoting Petitioner's brief at 4, 11). "He maintains 'there was no clear evidence presented that even money was found on [his] person,' and he 'could actually have been at the residence as a visitor when this entire incident took place.'" (Id., quoting Petitioner's brief at 12). The Superior Court then observed that in situations where it cannot be proved that a defendant had contraband on his person, as was the case with Petitioner, "the Commonwealth must establish constructive possession." (Id., quoting Commonwealth v. Haskins, 677 A.2d 328, 330 (Pa.Super. 1996)). Constructive possession can be proved through a showing that the defendant exercised "conscious dominion" over the substance, (id., quoting Commonwealth v. Mercado, 617 A.2d 342 (Pa.Super. 1992)), which is defined as "the power to control the contraband and the intent to exercise that control." (Id. at 7, quoting Commonwealth v. Parker, 847 A.2d 745, 750 (Pa.Super. 2004)). "As with any other element of a crime, constructive possession may be proven by circumstantial

10

evidence, and the requisite intent may be inferred from the examination of the totality of the circumstances." (Id. at 7, quoting Commonwealth v. Clark, 746 A.2d 1128 (Pa.Super. 2000)).

The Superior Court concluded that "there is ample evidence to establish appellant was in constructive possession of both drug paraphernalia and numerous controlled substances with the intent to deliver them[,]" (id.), and in support quoted the trial court's summary of the evidence introduced at trial:

> Three detectives of the narcotics unit, Donald Dacus, Matthew Fischer and Michael Chodubski, were responsible for rear containment of the residence [located at 943 East 23rd Street] at the time the search warrant was being executed. Their job was to allow SWAT team members to perform entry in the rear of the residence while they secured the back door in case anybody attempted to flee from it. Officer Dacus heard officers knock and announce themselves, a flashbang went off and windows broke, then the rear door opened and he saw Mr. Johnson and two other black males running towards them trying to flee out the back door. (Trial Transcript, Day Two, 1/26/06, pp. 25-26). At that time Officer Fischer drew his weapon and ordered Mr. Johnson and two other males to the ground. Id. at 86. They complied and laid down on the kitchen floor where they were handcuffed. Id. at 87. Officer Fischer noticed that where the defendant and two other males were on the ground there were two stacks of money, one by Mr. Johnson and one by a co-defendant. In the corner of the kitchen, within two arms reach of anybody in the kitchen, was a bag containing heroin and crack, another bag containing a larger amount of crack, and another bag containing crack cocaine. Id. There also was cash and crack cocaine scattered on the floor of the kitchen. Id. at 27.
> 
> After the residence was secured, Officer Dacus assisted in searching the kitchen. His search uncovered two boxes of razor blades, a digital scale, creatine powder, ecstasy, chunk crack, wax paper containing heroin, bulk chunk heroin, and crack cocaine. (T.T., Day Two, 1/26/06, pp. 35-48). He then proceeded to the backyard where he uncovered a bag of $845 in cash, a handgun, and marijuana. Id. at 49-55.
> 
> Officer Fischer found a combination of women's and men's clothing and shoes in a back bedroom. Id. at 94. The search of the other bedroom revealed a police scanner as well as more women's clothing and items, and $500 in a pair of jeans. (T.T., Day One, 1/25/06, pp. 115-116).
> 
> Timothy Burton testified that on July 28, 2006, prior to police executing the search warrant at the 943 East 23rd Street residence, he arranged to purchase drugs from a black male known as C-Note who was staying at 943 East 23rd Street. (T.T., Day Two, 1/26/06, pp. 7-8).

11

> Mr. Burton testified that in the late afternoon … he drove to East 23rd Street and saw C-Note walking down the street with another male and a female. Id. at 8. He stated he exited his car and he and C-Note went behind the house to complete the drug transaction. Id. at 8. Mr. Burton then left and was pulled over by police officers a few minutes later and confessed concerning the drug deal that had just taken place. Id. at 10. During the trial, Mr. Burton identified C-Note as being the defendant Kyle Johnson. Id. at 9. Officer Fischer was one of the officer's that stopped Mr. Burton. During the surveillance of 943 East 23rd Street on July 28, 2005, Officer Fischer observed Mr. Burton approach three individuals who were walking down the street. Id. at 83. Officer Fischer identified the defendant, Mr. Johnson, as one of the individuals, and the two co-defendants as the other two individuals. Id. The officer then testified that he saw Mr. Burton and Mr. Johnson disappear behind the residence where he believed a drug deal was taking place. Id. at 83-84. Officer Fischer and another detective followed Mr. Burton as he left the residence. Id. at 84. After seven blocks they pulled over and determined that Mr. Burton had in fact purchased crack cocaine from Mr. Johnson. Id.
>
> In addition to testifying regarding the incident that took place on July 28, 2005, Officer Dacus and Officer Fischer testified in the capacity of experts in drug investigation. On the basis of that testimony the jury could have found that digital scale seized at the residence is most commonly used to weigh controlled substances, and is one of the most critical tools in a drug operation. Id. at 43. The razor blades that were seized are most commonly used to separate drugs into individual weight. Id. Creatine powder is an athletic supplement with a consistency and look of powder cocaine. Id. at 44. Creatine is a white granule, really fine, powdery substance that drug deals use to mix in with powder cocaine to increase their volume. It will take away from the purity or potency of the cocaine but it will increase volume and therefore profit. Id.

(Id. at 7-9, quoting CP Dkt. No. 35, Johnson, No. 3350 of 2005, slip op. at 4-7).

### (b) Analysis

The Superior Court applied the Pennsylvania equivalent of the Jackson standard when it analyzed this claim. (Id. at 3). See also Evans v. Court of Common Pleas, Delaware Cnty., 959 F.2d 1227, 1233 (3d Cir. 1992) (the test for insufficiency of the evidence is the same under both Pennsylvania and federal law). Thus, as was the case with Petitioner's ineffective assistance claim, because the state court applied the correct legal standard, its adjudication satisfies review under the "contrary to" clause of § 2254(d)(1), see Williams, 529 U.S. at 406, and the only question for this Court to decide is whether the state court's decision was an "unreasonable application of" Jackson or based on an unreasonable

12

determination of the facts. 28 U.S.C. § 2254(d). The Supreme Court has recently stressed to federal habeas courts conducting this analysis that:

> [w]e have made clear that <u>Jackson</u> claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury – not the court – to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. <u>Cavazos v. Smith</u>, 565 U.S. 1, __ (2011) (*per curiam*) (slip op., at 1). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" <u>Ibid.</u> (quoting <u>Renico v. Lett</u>, 559 U.S. __, __ (2010) (slip op., at 5)).
> - - -
> [T]he only question [for the state court] under <u>Jackson</u> is whether [the jury's] finding was so insupportable as to fall below the threshold of bare rationality. The state court of last review did not think so, and that determination in turn is entitled to considerable deference under AEDPA, 28 U.S.C. § 2254(d).

<u>Coleman</u>, 132 S.Ct. at 2062, 2065.

This Court cannot say that it was objectively unreasonable for the Superior Court to conclude that the jury's verdicts were supported by the constitutional minimum of evidence necessary. Petitioner takes issue with the Superior Court's decision, but under the standard of review that this Court must apply when reviewing its decision, there is no basis for this Court to disturb it. Petitioner also argues that there was no evidence presented at trial that he was also known as C-Note, but that is not true. Burton made an in-court identification of him as being the individual he knew as C-Note (Day 1 Trial Tr. at 9-10), and although the defense argued to the jury that it should not credit his identification (Day 3 Trial Tr. at 32-39), it was up to the jury to determine what, if any, weight it would give his testimony. As the Superior Court noted, "[w]e are precluded from reweighing the evidence and substituting our judgment for that of the factfinder." (CP Dkt. No. 27, <u>Johnson</u>, No. 410 WDA 2007, slip op. 10).

13

Based upon all of the foregoing, Petitioner's claim that there was insufficient evidence to support the jury's verdicts must be denied.

### C. Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. 28 U.S.C. § 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Applying those standards here, jurists of reason would not find it debatable whether each of Petitioner's claims should be denied. Accordingly, a certificate of appealability should be denied.

## III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the petition for a writ of habeas corpus be denied and that a certificate of appealability be denied.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the petitioner must seek review by the district court by filing objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to do so will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

/s/ Susan Paradise Baxter

SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: November 26, 2012

cc: The Honorable Sean J. McLaughlin
United States District Judge